UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL FISHER,

       Petitioner,                      Case No. 2:11-cv-209

v.                                     Honorable R. ALLAN EDGAR

JEFFREY WOODS,

       Respondent.
_____/

## MEMORANDUM AND ORDER

Petitioner Michael Fisher, filed this petition for writ of habeas corpus challenging his first degree murder, felony firearm and carrying a concealed weapon convictions. Petitioner is serving two terms of life imprisonment without parole on the first degree murder convictions, two years for each of his two felony fire arms convictions and 23 months to 5 years for his concealed weapon conviction. Petitioner argues that:

> I. Petitioner was denied due process and a fair trial where he was tried on the basis of irrelevant and unfairly prejudicial similar acts evidence.
>
> II. The trial court abused its discretion in refusing to suppress statements obtained in violation of the psychologist-patient privilege and in refusing to suppress Petitioner's incriminating statements to the police obtained without Miranda warnings.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's

application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

In his first claim, petitioner contends that the trial court abused its discretion when it admitted evidence where the probative value was outweighed by the prejudicial effect contrary to Michigan state law. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. Petitioner cannot establish that the admission of this testimony violated his due process rights. The Michigan Court of Appeals explained:

> First, defendant argues that MRE 404(b) barred testimony from defendant's former wife, Annette Daley, and defendant's stepdaughter, Nicole Burgdorf, because their testimony was irrelevant and the prejudicial effect substantially outweighed the probative value of the testimony. At trial, Daley testified that defendant physically assaulted her during their relationship and threatened to kill her on multiple occasions. According to Daley, when defendant threatened to kill her, he told her that he would avoid criminal responsibility for the murder by pleading insanity. Additionally, Burgdorf testified that defendant talked of robbing banks and he stated that he would plead insanity to avoid any criminal responsibility for committing any crimes.
>
> Generally, a trial court's decision to admit evidence is reviewed for an abuse of discretion. *People v. Taylor,* 252 Mich.App. 519, 521–522, 652 N.W.2d 526 (2002). "A trial court may be said to have abused its discretion only when its decision falls outside the principled range of outcomes." *People v. Blackston,* 481 Mich. 451, 460, 751 N.W.2d 408 (2008). The decision to admit evidence "frequently involves a preliminary question of law, such as whether a rule of evidence or statute precludes the admission of the evidence. We review questions of law de novo. Therefore, when such preliminary questions are at issue, we will find an abuse of discretion when a trial court admits evidence that is inadmissible as a matter of law." *People v. Katt,* 468 Mich. 272, 278, 662 N.W.2d 12 (2003).

4

> MRE 404(b)(1) provides:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Pursuant to MRE 404(b), evidence of other acts committed by a defendant is inadmissible "if the proponent's only theory of relevance is that the other acts shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question." *People v. VanderVliet,* 444 Mich. 52, 63, 508 N.W.2d 114 (1993), amended 445 Mich. 1205, 520 N.W.2d 338 (1994). Evidence is admissible under MRE 404(b) if the evidence is offered for a proper purpose, the evidence is relevant, and the probative value of the evidence substantially outweighs the potential of unfair prejudice. *Id.* at 74–75, 508 N.W.2d 114.

This Court must initially consider whether this evidence was admitted for a proper purpose. The plain language of MRE 404(b)(1) considers premeditation, intent and plan to be proper purposes. The prosecution submitted the evidence to demonstrate defendant premeditated the murders and planned and intended to kill the victims. Based on the plain language of MRE 404(b)(1), the evidence was offered for a proper purpose. MRE 404(b)(1).

If the evidence was admitted for proper purpose, then this Court must determine if the evidence was relevant. *VanderVliet, supra* at 74–75, 508 N.W.2d 114. MRE 401 provides:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

A material fact is defined as one that is "in issue" in that "it is within the range of litigated matters in controversy." *Id*. Because defendant's state of mind was in issue and was material to the case, the fact that defendant on several previous occasions threatened to kill Daley and

> stated to both Daley and Burgdorf that he would avoid criminal responsibility for any criminal act by pleading insanity was logically relevant to whether defendant was truly insane at the time of the murders and made it more probable than not that he was not insane. Consequently, the evidence was relevant. See *People v. Cramer,* 97 Mich.App. 148, 159–161, 293 N.W.2d 744 (1980) (Because the defendant pleaded an insanity defense, his state of mind was in issue and the prosecution was permitted to present relevant evidence to establish defendant's state of mind on the day of the murder).
>
> This Court must next determine whether the evidence was more probative than prejudicial. *VanderVliet, supra* at 74–75, 508 N.W.2d 114. MRE 403 provides:
>
>> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
>
> Here, defendant's threats to Daley and defendant's statements to both Daley and Burgdorf about pleading insanity to avoid criminal responsibility were clearly probative of defendant's state of mind at the time of the murders. Though this evidence of defendant's state of mind was probative, the evidence that defendant physically abused Daley, attempted to set her afire, and that he considered robbing a bank was also prejudicial. However, defendant fails to establish that he was unfairly prejudiced by this evidence as required by MRE 403. See *People v. Pickens,* 446 Mich. 298, 336, 521 N.W.2d 797 (1994) ("The inquiry pursuant to MRE 403, however, is whether the disputed evidence was unfairly prejudicial. After all, presumably all the evidence presented by the prosecutor was prejudicial because it attempted to prove that defendant committed the crime charged.")

Opinion at 1-3, docket #27. Petitioner failed to establish that he received an unfair trial by the admission of this evidence. Moreover, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based

upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner asserts that the psychiatrist-patient privilege was violated when statements that he made to hospital word processing assistant and hospital security guard were admitted into evidence. The Michigan Court of Appeals rejected this claim:

> Second, defendant contends that statements he made to a word processing assistant and a security guard at the Kalamazoo Regional Psychiatric Hospital (KRPH) while he sought admission to the hospital were protected by psychologist-patient privilege. Thus, the trial court should have suppressed the evidence. "This Court reviews de novo a trial court's ultimate decision on a motion to suppress evidence." *People v. Akins,* 259 Mich.App. 545, 563–564, 675 N.W.2d 863 (2003). Though this Court reviews the entire record de novo, a trial court's factual findings are reviewed for clear error. *People v. Daoud,* 462 Mich. 621, 629, 614 N.W.2d 152 (2000). "The trial court's factual findings are clearly erroneous if, after review of the record, this Court is left with a definite and firm conviction that a mistake has been made." *People v. Givans,* 227 Mich.App. 113, 119, 575 N.W.2d 84 (1997).
>
> > MCL 333.18237 provides, in pertinent part:
> >
> > A psychologist licensed or allowed to use that title under this part or an individual under his or her supervision cannot be compelled to disclose confidential information acquired from an individual consulting the psychologist in his or her professional capacity if the information is necessary to enable the psychologist to render services.
>
> "The purpose of the privilege statute is to protect the confidential nature of the psychologist-patient relationship." *People v. Lobaito,* 133 Mich.App. 547, 562, 351 N.W.2d 233 (1984). In addition, the admissibility of privileged communications is governed by MCL 330.1750, which prohibits the disclosure of "privileged communications" in a criminal case unless the patient has waived the privilege or an exception applies. MCL 333.1750(1). The Mental Health Code defines "privileged communications" as "a communication made to a psychiatrist or psychologist in connection with the examination, diagnosis, or treatment of a patient, or to another

7

> person while the other person is participating in the examination, diagnosis, or treatment or a communication made privileged under other applicable state or federal law." MCL 330.1700(h). Statutory provisions are narrowly defined. *People v. Childs,* 243 Mich.App. 360, 364–365, 622 N.W.2d 90 (2000). Privileges therefore are not easily found or endorsed by the courts. *People v. Stanaway,* 446 Mich. 643, 658, 521 N.W.2d 557 (1994).
>
> In this case, the psychologist-patient privilege does not apply to defendant's statements that he made to the word processing assistant and the security guard. As noted in *Lobaito, supra* at 562, 351 N.W.2d 233, the purpose of the privilege is to protect the relationship between the psychologist and the patient. Defendant has failed to establish any such relationship existed. Defendant was never admitted to the hospital and never consulted with a psychologist at KRPH. Defendant relies on *People v. Mineau,* 194 Mich.App. 244, 486 N.W.2d 72 (1992), and *People v. Farrow,* 183 Mich.App. 436, 455 N.W.2d 325 (1990), to support his claim that his communication to Keiser and Garza was privileged. Defendant's reliance on these cases is misplaced because in both cases the defendants consulted with mental health counselors for the purposes of treatment. *Mineau, supra* at 245, 486 N.W.2d 72; *Farrow, supra* at 441, 455 N.W.2d 325. It is undisputed that defendant never consulted with a mental health professional while at KRPH. The statutory privilege requires that the individual consult a psychologist in his/her professional capacity, which did not occur here. See MCL 333.18237.
>
> Defendant also failed to establish that the challenged statements made to Keiser or Garza or both were "necessary to enable the psychologist to render services." MCL 333.18237. Further, defendant fails to demonstrate that his communication with Keiser and Garza was "privileged" as defined by MCL 330.1700(h). The challenged statements were not "to another person while the other person is participating in the examination, diagnosis, or treatment ..." MCL 330.1700(h). There was no evidence in the record to support that defendant was ever examined, diagnosed, or treated at KRPH. Because statutory privileges are narrowly defined, the privilege did not exist on the facts of this case. See *Childs, supra* at 364–365, 622 N.W.2d 90.

Opinion at 3-4, docket #27.

Petitioner has failed to establish any violation of a privilege. Moreover, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that it was error for the court to not suppress his statements that were made to police before *Miranda* warnings were provided. The Supreme Court has stated:

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But since the police surely cannot be held accountable for unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Rhode Island v. Innis*, 446 U.S. 291, 300-02, 100 S. Ct. 1682, 1689-90 (1980). It is well settled that statements made voluntarily by the defendant are admissible and not a violation of *Miranda*. *Miranda v. State of Arizona*, 384 U.S. 436, 478, 86 S. Ct. 1602, 1630 (1966). The Michigan Court of Appeals rejected Petitioner's claim because Petitioner made the statements voluntarily and not in response to the questions asked by the detective. The court explained:

> Third, defendant argues that the trial court should have suppressed his statements to a police detective because the statements were elicited during a custodial interrogation before defendant's *Miranda* rights had been explained to him. Specifically, defendant challenges the admission of defendant's comment that no one was home in response

9

> to the detective's inquiry into defendant's telephone number and of defendant's request that the detective shoot him in the head.
>
> Both the Fifth Amendment of the United States Constitution and the Michigan Constitution prohibit the government from compelling a defendant to testify against himself. US Const, Am V; Mich Const, art 1, § 17. To admit a statement into evidence obtained from a defendant during a custodial interrogation, the defendant must have voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *Akins, supra* at 564, 675 N.W.2d 863. "[T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis,* 446 U.S. 291, 301–302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (emphasis in original).
>
> Here, defendant made the challenged statements when the detective asked him standard identification questions, such as defendant's name, address, telephone number, and date of birth. Because these were basic identifying questions, these questions were not likely to elicit any incriminating response. Contrary to defendant's assertions, the fact that the detective knew of defendant's visit to the hospital the night of the murders did not make the preliminary questions any more likely to elicit an incriminating answer. In fact, the detective testified that defendant was calm, was able to respond appropriately to the questions, was not crying, understood where he was at, and was coherent. Thus, there was no reason for the detective to have known that it was "reasonably likely" that requesting defendant's telephone number and other basic identifying questions would elicit an incriminating response. See *Innis, supra* at 301–302.

Opinion at 4-5, docket #27. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Accordingly, the Petition is Dismissed.

In addition, if Petitioner should choose to appeal this action, a certificate of appealability is denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Memorandum and Order will be entered.

SO ORDERED.

Dated:      4/18/2014                      /s/ R. Allan Edgar
                                           R. Allan Edgar
                                           United States District Judge